ON RETURN TO REMAND
The appellant, Paul Folsom, was convicted of sexual abuse in the first degree and of burglary in the first degree, violations of § 13A-6-66 and 13A-7-5, Code of Alabama 1975, respectively. We remanded this case so that the trial court could conduct a Batson v. Kentucky, 476 U.S. 79,106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), hearing. We further instructed the court to determine whether a prima facie case of gender discrimination was established and, in making the determination, not to rely solely on the composition of the jury, a practice condemned by the Alabama Supreme Court in Exparte Thomas, 659 So.2d 3 (Ala. 1994). The court has complied with our directions and has filed the following return to remand:
 "According to the count after the strikes, there were nine males and four females, and I selected, by agreement during the course of the case, the trial of the case, at the end of the closing arguments and after I charged the jury, the extra juror, by random draw out of the stack of name cards and by chance.
". . . .
 "Based upon my best recollection at this time, having heard the responses of each of the jurors to the questions that both attorneys during the jury voir dire asked the jurors, and the manner in which they responded to those questions, and having before the Court, the trial Court, all of the information that was had, I did not find a prima facie case of gender discrimination.
 "I still do not find a prima facie case of gender discrimination.
 "Even though this Court used the term 'makeup,' in reviewing my notes at the time we were having the Batson discussion in chambers, I did not base my decision solely on the composition of the jury, but all of the information I had before the Court at that time in making a finding of a lack of showing of a prima facie case.
 "By the same token, the fact that six out of seven strikes are males, as opposed to females, or six of the seven strikes being females, as opposed to males, this Court does not believe to be a determining factor in and of itself, the composition of the strikes, that there is a prima facie showing.
 "I, typically, like to listen to the response of a juror, or lack of response, in determining whether there is a sufficient showing, when a motion is made."
It is clear that the court, when determining whether a prima facie case of discrimination existed, considered more than the composition of the jury. A trial court's ruling on aBatson motion is entitled to great deference on appeal. Batson,476 U.S. at 98, fn. 21, 106 S.Ct. at 1724, 90 L.Ed.2d at 89. This court will reverse a trial court's ruling only if the ruling is "clearly erroneous." Ex parte Lynn, 543 So.2d 709
(Ala. 1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351,107 L.Ed.2d 338 (1989); Ex parte Branch, 526 So.2d 609 (Ala. 1987). The trial court's ruling was not "clearly erroneous."
 I
The appellant asserts that there was not sufficient evidence to convict him of burglary. He specifically contends that because *Page 116 
his wife, from whom he was separated at the time of the offense, owned the house, and because he had lived there during the marriage, he could not lawfully be convicted of burglary.
The state's evidence tended to show that the appellant and Patricia Criddle were married in August 1992 and that the appellant then moved into Criddle's house. Shortly after the marriage, the appellant became abusive and Criddle asked him to leave. The appellant had stayed in the house for approximately 35 days. The appellant gave Criddle the house keys in September 1992, and Criddle filed for divorce in October 1992. Criddle testified that on several occasions the appellant came to her house and kicked the door open. On December 13, 1992, the appellant kicked the back door open and lunged at Criddle with a knife.
The issue whether a spouse can burglarize the residence of the other spouse was addressed in depth in this court's opinion in White v. State, 587 So.2d 1218 (Ala.Cr.App. 1990), aff'd,587 So.2d 1236 (Ala. 1991), cert. denied, 502 U.S. 1076,112 S.Ct. 979, 117 L.Ed.2d 142 (1992). This court stated:
 "In Alabama, '[b]urglary, like trespass, is an offense against the possession, and hence the test for the purpose of determining in whom the ownership of the premises should be laid in an indictment is not the title, but the occupancy or possession at the time the offense was committed.' Hamilton v. State, 283 Ala. 540, 545, 219 So.2d 369, 374, cert. denied, 396 U.S. 868, 90 S.Ct. 134, 24 L.Ed.2d 121 (1969) (quoting Fuller v. State, 28 Ala. App. 28, 30, 177 So. 353, 354 (1937)). 'A person "enters or remains unlawfully" in or upon premises when he is not licensed, invited or privileged to do so.' Ala. Code 1975, § 13A-7-1(4). Under Alabama law, a person who is licensed or privileged to enter premises cannot commit criminal trespass or burglary. Johnson v. State, 473 So.2d 607, 609 (Ala.Cr.App. 1985).
 "At the time of the crime, the defendant and his wife were separated.
". . . .
 "The law in this regard is stated in 12A C.J.S. Burglary § 38 at 230 (1980):
 " 'Some authorities broadly state that a man cannot burglarize his wife's home, and it is considered that the burglary statute is not designed to protect against entries by persons occupying a marital or immediate familial relationship with the legal possessor of property. So, it is held that in the absence of a legal separation agreement, or restraining order, or court decree limiting or ending the consortium rights of the parties, each spouse has a legal right to be with the other spouse on premises possessed by either or both spouses so long as the marriage exists, and entry onto such premises by either spouse cannot be a burglary, although a court order will negate any rights to enter the premises.' (Footnotes omitted.)
 "While 'the offense [of burglary] is not committed by one who breaks and enters his own dwelling or other building,' Stanley v. State, 57 Ala. App. 83, 84, 326 So.2d 148, 149 (1976); Wilson v. State, 247 Ala. 84, 85, 22 So.2d 601, 602 (1945), '[i]t has, however, also been held that the mere existence of the marriage relationship does not preclude the one spouse from committing burglary against the other spouse.' " 12A C.J.S. Burglary § 38 (1990 Supp.) (footnote omitted).
 "We agree with the holding of the Florida Supreme Court in Cladd v. State, 398 So.2d 442, 443-44 (Fla. 1981):
 " 'The sole issue presented for review is whether a husband, who is physically but not legally separated from his wife, can be guilty of burglary when he enters premises, possessed only by the wife and in which he has no ownership or possessory interest, without the wife's consent and with intent to commit an offense therein. . . . We hold that under the particular facts of this case, the defendant could be guilty of burglary of his estranged wife's apartment. . . .
 " 'The factual situation is narrow. The defendant and his wife had been separated for approximately six months, although there was no formal separation agreement or restraining order. He had no ownership or possessory interest in *Page 117 
his wife's apartment and had at no time lived there. One morning, he broke through the locked door of her apartment with a crowbar, struck her, and attempted to throw her over the second floor stair railing. . . .
". . . .
 " 'We reject the defendant's contention that the marriage relationship and the right of consortium deriving therefrom preclude the State from ever establishing the nonconsensual entry requisite to the crime of burglary. . . . Since burglary is an invasion of the possessory property rights of another, where premises are in the sole possession of the wife, the husband can be guilty of burglary if he makes a nonconsensual entry into her premises with intent to commit an offense, the same as he can be guilty of larceny of his wife's separate property. In State v. Herndon, 158 Fla. 115, 27 So.2d 833 (1946), discussing a wife's separate property rights, we held that a husband could be charged with the larceny of his wife's separate property, and we explained:
 " ' "In a society like ours, where the wife owns and holds property in her own right, where she can direct the use of her personal property as she pleases, where she can engage in business and pursue a career, it would be contrary to every principle of reason to hold that a husband could ad lib appropriate her property. If the common-law rule was of force, the husband could collect his wife's pay check, he could direct its use, he could appropriate her separate property and direct the course of her career or business if she has one. We think it has not only been abrogated by law, it has been abrogated by custom, the very thing out of which the common law was derived."
 " '27 So.2d at 835. The defendant's consortium rights did not immunize him from burglary where he had no right to be on the premises possessed solely by his wife independent of an asserted right to consortium.'
 "This principle is supported by additional authority:
 " 'We reject the position that there is any absolute right on the part of one spouse to be with the other against the other's wishes, giving a right to break into the home of the other with the intent to commit a crime. We adopt the position of the Florida court in Cladd v. State, Fla., 398 So.2d 442 (1981), of the Ohio court in State v. Herrin, 6 Ohio App.3d 68, 453 N.E.2d 1104 (1982), and of the Washington court in State v. Schneider, 36 Wn. App. 237, 673 P.2d 200 (1983), all of which hold that burglary is an invasion of the possessory right of another and extends to a spouse.'
 "Matthews v. Commonwealth, 709 S.W.2d 414, 420
(Ky. 1985), cert. denied, 479 U.S. 871, 107 S.Ct 245, 93 L.Ed.2d 170 (1986).
 "A number of authorities are cited in Parham v. State, 79 Md. App. 152, 161, 556 A.2d 280, 284-85
(1989):
 " 'The only evidence on the status of the property in the instant case was that Queen [the defendant's wife] was in sole possession and in the process of purchasing the property in her own name, and that appellant was living with his sister and was not on the title. Appellant had separated from his wife approximately six weeks prior to the incident, having spent only a week in the West Lombard Street home before the separation. He had left very few belongings there; most of his clothes were at other places.
 " 'While we have not had occasion to hold specifically that an estranged spouse can be convicted of burglary if the dwelling house broken into was once shared with his or her spouse, other courts have held, virtually unanimously, that the marital relationship does not preclude a conviction for burglary. We discovered no cases other than the following. See Cladd v. State, 398 So.2d 442, 443 (Fla. 1981) (husband who had been separated from wife for six months with no formal separation agreement or restraining order had no ownership or possessory interest in wife's apartment *Page 118 
and could be charged with burglary, expressly overruling Vazquez v. State, 350 So.2d 1094
(Fla.App. 1977), which held that the husband had a legal right to be with his wife on the premises occupied by her at the time of entry); Matthews v. Commonwealth, 709 S.W.2d 414, 420 (Ky. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 245, 93 L.Ed.2d 170 (1986) (husband who was under a court order in connection with a sexual abuse charge to stay away from the premises was not entitled to directed verdict on burglary charge where the evidence indicated he broke into his estranged wife's residence approximately five weeks after they had separated); Knox v. Commonwealth, 225 Va. 504, 304 S.E.2d 4, 6 (1983) (husband separated from wife for approximately six months had no proprietary interest in wife's apartment and could be charged with burglary); State v. Dively, 431 N.E.2d 540, 543 (Ind.App. 1982) (mere fact of conjugal status does not preclude a spouse from committing burglary against the other spouse); State v. Woods, 526 So.2d 443, 445
(La.App. 1988) (Louisiana's community assets rule did not preclude a burglary conviction of husband of apartment tenant by legally separated wife); State v. Cox, 73 N.C. App. 432, 326 S.E.2d 100, 102-03, cert. denied, 313 N.C. 605, 330 S.E.2d 612 (1985) (evidence which established that husband had been separated from his wife without separation agreement for more than a year prior to offense and wife repeatedly refused permission for husband to enter her residence was sufficient to sustain conviction for burglary); State v. Schneider, 36 Wn. App. 237, 673 P.2d 200, 203-04, (1983) (sufficient evidence to convict wife who had been separated from husband for nine months of conspiracy to burglarize husband's residence where the wife was not living at residence at the time of offense). But see State v. Weitzel, 112 Ohio App. 300, 168 N.E.2d 550, 551 (1960) (stating that a man cannot burglarize his wife's home, but State v. Herrin, 6 Ohio App.3d 68, 453 N.E.2d 1104, 1106 (1982), seemingly contradicts Weitzel in holding that husband who was separated from wife for 12 years committed burglary even though he and his wife owned the house). The common thread running through these cases is that the mere existence of the marriage relationship does not put a spouse's separate property beyond the protection of the law and subject to the depredation of the other spouse. See Dively, 431 N.E.2d at 543.
 " 'Given the evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant neither had a possessory interest in the residence nor had a right to be in the residence at the time he entered. We hold the evidence is sufficient to sustain appellant's conviction for burglary.' (Footnotes omitted.)"
White, 587 So.2d at 1223-26.
The facts were sufficient to present the case to the jury on the issue whether the appellant was guilty of burglary.
The appellant further contends that there was not sufficient evidence to find him guilty of sexual abuse. Criddle testified that the appellant kicked open the door to her house, dragged her to the bedroom, forcibly placed an object in her vagina, and then had sexual intercourse with her. The victim's testimony alone was sufficient to present the case to the jury on the issue whether the appellant was guilty of sexual abuse.
 II
The appellant also asserts on appeal that the indictment was defective. As the state correctly notes, this issue is raised for the first time on appeal and, therefore, is not correctly before this court. Ayers v. State, 659 So.2d 177
(Ala.Cr.App. 1994).
For the foregoing reasons, the judgment in this cause is due to be, and it is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 119